Argued and submitted June 15, affirmed August 12, 2020

In the Matter of E. S. H.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. G. H.,
aka T. G. H.,
*Appellant.*

Lincoln County Circuit Court
19JU04618; A172381 (Control)

In the Matter of W. A. E.,
aka W. E., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. G. H.,
aka T. G. H.,
*Appellant.*

Lincoln County Circuit Court
19JU04620; A172382

In the Matter of M. L. H.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. G. H.,
aka T. G. H.,
*Appellant.*

Lincoln County Circuit Court
19JU04621; A172383

473 P3d 591

Father appeals from a judgment of the Lincoln County juvenile court assuming jurisdiction over father's three children, who are Native American. Father contends that the court erred in rejecting his argument that DHS's jurisdictional

petition is barred by issue preclusion as a result of an earlier jurisdictional proceeding in the Douglas County juvenile court in which the court had not assumed jurisdiction. Father also asserts that the court erred in denying his motion *in limine* to exclude from the court's consideration evidence that had previously been considered by the Douglas County juvenile court in evaluating the earlier jurisdictional petition. Father contends, in the alternative, that the evidence does not establish sufficient grounds for dependency jurisdiction. *Held*: The Lincoln County juvenile court did not err in rejecting father's contention that DHS's jurisdictional petition is barred by issue preclusion, because the Lincoln County petition included new allegations that were based on new substantial material facts that were not considered by the Douglas County court. The trial court also did not err in denying father's motion *in limine* to exclude evidence that had been considered previously by the Douglas County court, because, in determining whether DHS had met its burden to establish the new allegations by clear and convincing evidence, the Lincoln County juvenile court was required to evaluate the totality of the circumstances, including the present effects of past events on the children's condition. Finally, the juvenile court's judgment assuming jurisdiction is supported by legally sufficient evidence in the record.

Affirmed.

Amanda R. Benjamin, Judge pro tempore.

Christopher W. Peterman argued the cause and filed the brief for appellant.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

This juvenile dependency case is subject to the Indian Child Welfare Act (ICWA), because it involves three children who, with their mother, are enrolled members of the Oglala Sioux Tribe. In this proceeding, the Lincoln County juvenile court assumed jurisdiction of the children based on allegations in a petition filed by the Department of Human Services (DHS) under ORS 419B.100(1)(c) (juvenile court has original jurisdiction over any case involving a child "whose condition or circumstances are such as to endanger the welfare" of the child), that father, with whom they were living, had exposed them to violence and lacked the parenting skills, including disciplinary skills, to safely parent the children. Father challenges the jurisdictional judgment, contending that the juvenile court erred in denying his motion *in limine* to exclude from the court's consideration evidence that had previously been considered by the Douglas County juvenile court in evaluating an earlier jurisdictional petition. Father contends, further, that the Lincoln County petition should be dismissed based on issue preclusion, because the current allegations are nearly identical to those that were previously litigated and rejected by the Douglas County juvenile court. Father contends, in the alternative, that the evidence does not establish sufficient grounds for dependency jurisdiction. We conclude that the Lincoln County juvenile court did not err in denying father's motion *in limine* and that the juvenile court's judgment is supported by legally sufficient evidence in the record; accordingly, we affirm.

Father has not requested that we exercise our discretion to review *de novo*, ORS 19.415(3)(b), and this is not an exceptional case in which *de novo* review would be appropriate. *See* ORAP 5.40(8)(c) (we review *de novo* "only in exceptional cases"). Accordingly, in reviewing the juvenile court's judgment, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We are bound by the juvenile court's explicit and implied findings of

historical fact, if any evidence in the record supports them. *Id*. at 639-40.

Mother and father have been separated for five or six years, and father had legal custody of the children in Douglas County. Mother lives in Lincoln County. The children, two boys, ages 12 (W) and 8 (E), and a girl, age 10 (M), were taken into DHS's custody in Douglas County on January 10, 2019, based on "founded" allegations of abuse and neglect by father, and DHS filed jurisdictional petitions in Douglas County. The petitions alleged:

"A.    The father has used inappropriate discipline upon the child and/or the child's sibling;

"B.    The father has caused physical injury and/or mental and emotion [*sic*] harm to child;

"C.    The father has neglected the child's basic needs;

"D.    The mother is unable to protect the child from father's abuse."

Before the jurisdictional hearing, DHS decided not to proceed, because it concluded that mother was a fit parent; but mother and the two boys adopted the petitions and requested that the court take jurisdiction. *See* ORS 419B.809 (allowing "[a]ny person" to file a petition alleging that a child is within the jurisdiction of the juvenile court). The two boys remained in mother's custody. The 10-year-old girl did not adopt the petition and returned to father's home. Because the boys were in DHS's care, DHS remained a party to the Douglas County proceeding, ORS 419B.875(1)(a)(G), but it did not participate or argue for jurisdiction.

Because this case is subject to ICWA, in order to establish jurisdiction and remove the children from father's custody, the allegations of the petition had to be shown by clear and convincing evidence and demonstrate that continued custody by father was likely to result in serious emotional or physical injury to the children. ORS 419B.340(7). (When an Indian child is involved, "[f]oster care placement may not be ordered in a proceeding in the absence of a determination, supported by clear and convincing evidence, * * * that the continued custody of the Indian child by the parent or Indian custodian is likely to result in serious emotional or

physical injury to the Indian child."). Among other evidence presented at the Douglas County jurisdictional hearing, the children testified, describing father's disciplinary style, which included hard labor and corporal punishment.

In ruling from the bench on May 21, 2019, the Douglas County juvenile court declined to say whether father's discipline was inappropriate. The court questioned some of W's testimony, believing that it might have been colored by his particular goal to no longer live with father. The court believed that father had been spanking the children with a stick but concluded that father was not inflicting "lasting injury." Ultimately, the court determined that the legal standard for taking jurisdiction had not been met.

While the Douglas County jurisdictional proceeding was pending and with DHS's consent, mother arranged for the boys to be counselled by Pierce, a child therapist with the Lincoln County Health and Human Services Department. Pierce saw the children and mother together weekly beginning in mid-March 2019 and provisionally diagnosed both boys with post-traumatic stress disorder (PTSD). On May 17, 2019, just a few days before the conclusion of the Douglas County proceedings, W shared with Pierce that he feared the possibility of returning to father's house because he believed that father would shoot him as a result of the information he had disclosed in the Douglas County proceeding.

Pierce was not called to testify in the Douglas County proceeding, and the boys' sessions with her were not a part of the record in the Douglas County proceeding.[1] Pierce reported W's concern to Lincoln County's health department. All three children were interviewed by a Lincoln County social services specialist. W again shared his fear that if he returned to father's home, father would shoot him, and both W and E described other incidents that had caused them to be afraid of father. They described incidents of physical abuse by father through inappropriate corporal punishment with a stick and an incident in which they

_____

[1] The record does not show why Pierce did not testify in the Douglas County proceeding.

were forced to watch the killing of the family's pet dog and to assist in the disposal of the dog's body on a burn pile. The boys recounted an incident in which father had once threatened another driver with a firearm while driving with the children on a freeway in Salem. When they were told that the Douglas County petitions had been dismissed, both boys expressed fear of father, and M appeared to be fearful of talking about father and would not talk when asked about abuse.

On May 26, 2019, DHS filed jurisdictional petitions for all three children in Lincoln County. DHS removed M from father's home and placed her with mother. A week later, mother obtained a Family Abuse Prevention Act (FAPA) order against father, which gave her custody of the children. Because mother now had custody of the three children, DHS withdrew its jurisdictional petition.

But, mother and the children became frightened when father was twice seen driving past the apartment complex where mother and the children were living in Lincoln County, and DHS filed new petitions. W expressed concern that father would come to his counseling sessions and shoot somebody. All three petitions alleged that the children had been exposed to violence from father and that mother was unable to protect them from father's violence. Mother admitted that allegation.

At the shelter hearing, father made an oral motion *in limine* to exclude evidence of events that had occurred before May 21, 2019, the date of the Douglas County court's judgment, on a theory of "issue preclusion." Father contended that much of the evidence that would support the new allegations had been or could have been presented in the Douglas County proceeding. Father contended that the evidence should therefore be excluded. Father did not move to dismiss the petitions; however, the juvenile court interpreted father's motion *in limine* as a motion to dismiss the allegations that were based on the same evidence as those that had been rejected by the Douglas County juvenile court.

DHS responded that the Douglas County judgment declining jurisdiction based on the record then before the court did not preclude the Lincoln County juvenile court

from considering the previous evidence as well as new evidence in evaluating the new and different allegations of the current petition. The earlier evidence was relevant, DHS contended, because "it's a stacking of events that leads DHS to have concerns about a family."

The juvenile court agreed with DHS:

"I agree that when evaluating whether jurisdiction is appropriate, that prior circumstances may not have warranted a jurisdictional finding; however, condition[s] and circumstances can be cumulative or have a cumulative effect on a child. Again, this can't be understood in a vacuum, if you will, when we're talking about families or other allegations. I'm not going to limit this particular hearing to only conditions or circumstances that are alleged to have occurred since May 21st."

The Lincoln County juvenile court denied father's motion *in limine* but ruled before the jurisdictional hearing that two of the allegations in the Lincoln County petition (allegations of father's failure to provide adequate food for the children and father's physical abuse of the children) should be dismissed, because they had been addressed and rejected by the Douglas County court on the identical factual record. After the shelter hearing, the juvenile court awarded temporary custody of the children to DHS, with placement with mother.

The Lincoln County jurisdictional petition went to hearing on five allegations relating to all three children:

"The mother was subjected to domestic violence by the father and the mother is unable to protect the child from exposure to father's violence.

"The mother failed and/or is unable to protect the child from the father's violence.

"The child has been exposed to violence by the father.

"The father's mental health problems, including anger control problems, interfere with his ability to safely parent the child.

"The father lacks skills necessary to safely parent the child, including knowledge of appropriate disciplinary practice."

Two additional allegations related only to W and E:

> "The father has subjected the child to mental, ver-
> bal, and/or emotional abuse resulting in impairment of
> the child's psychological and/or emotional well-being and
> functioning.

> "The child is fearful of the father, does not feel safe in
> the father's care, and is a suicide or runaway risk if placed
> in the father's care."

Father filed a written motion before the beginning of the jurisdictional hearing seeking to exclude evidence of events that occurred before the Douglas County's May 21, 2019, judgment. After the jurisdictional hearing, in a thoughtful and thorough written opinion, the juvenile court addressed father's issue preclusion argument.[2] The court turned for guidance to this court's opinion in *State ex rel Juv. Dept. v. Newman*, 49 Or App 221, 227, 619 P2d 901 (1980), *rev den*, 290 Or 449 (1981). In that case, the juvenile court had terminated a father's parental rights to his three children, but this court reversed, determining that the evidence was insufficient. The state then sought and obtained a second termination judgment. The father contended on appeal that the second termination proceeding was barred by "collateral estoppel" or "res judicata"[3] and that facts that were or could have been considered in the first termination proceeding could not be reconsidered in the second proceeding. *Id.* at 224. In rejecting the father's argument, we said in *Newman*:

> "Although we do not accept the father's argument, we do
> not go so far as to hold that collateral estoppel may never
> preclude relitigation of a fact in controversy in the first ter-
> mination proceeding with respect to which there has been
> a final factual finding. As in other litigation, there must

---

[2] As previously noted, father did not explicitly request dismissal of the allegations; his motion *in limine* only requested the exclusion of evidence. Ordinarily, we would conclude on that basis that the issue of dismissal had not been preserved. However, because the juvenile court assumed that father's motion *in limine* implicitly included a request for dismissal and also ruled on it, we defer to the juvenile court's interpretation of father's contentions and conclude that the question is sufficiently preserved.

[3] Claim preclusion and issue preclusion were formerly referred to by the courts as "*res judicata*" and "collateral estoppel." *Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990).

come a time when factual disputes reach a state of final [repose]—sound public policy demands it. But we need not pursue the extent to which collateral estoppel may be applicable to this type of proceeding because the father here takes the extreme view that if the second proceeding may be maintained at all, only facts arising subsequent to the first proceeding may be considered in the second one, and that position we reject.

"Termination of parental rights proceedings generally arise out of a continuing and cumulative set of circumstances, in which the child is within the juvenile court's jurisdiction and, often, is subject to agency custody or supervision. An order denying a petition to terminate parental rights seldom leads directly to the termination of wardship or of agency involvement. It is one thing to say that such an order bars a second termination proceeding when there has been no change in the operative facts which led to the initiation of the first proceeding; it is very different—and clearly wrong—to contend that, if new substantial material facts come into existence which justify the filing of a new termination proceeding, evidence and facts which were or could have been considered in the earlier proceeding cannot be considered or reconsidered in the later one."

*Id.* at 225-26.

In *Newman*, we found guidance in the Supreme Court's opinion in *Greisamer and Greisamer*, 276 Or 397, 401, 555 P2d 28 (1976), a child custody dispute. There, the Supreme Court said that the primary consideration in a child custody proceeding is "the best interests of the child." In light of that, the court in *Greisamer* concluded that evidence relating to a parent's "custodial qualifications existing at the time of the first proceeding are an essential ingredient in the second proceeding in determining what would best serve the children's interests." *Id.*

Citing *Greisamer*, we reasoned in *Newman* that, in termination cases, as in child custody matters, the primary concern is the best interests of the child. We concluded:

"[W]hen a second termination proceeding is not itself barred, the proof is not limited by res judicata or collateral estoppel principles to facts or evidence which was not considered in, or which came into being after, the first proceeding. Here, a new substantial material fact or facts existed;

the second proceeding was not barred by the fact of the first, and evidence and facts available or adduced at the time of the first proceeding could be considered in the later proceeding."

49 Or App at 227-28. Thus, in *Newman*, although we did not hold that a second termination proceeding could never be barred, we said that, when "a new substantial material fact or facts exist," a second proceeding will not be barred by claim or issue preclusion. *Id.* And, at least in the context of termination, we held that evidence of conduct that had been available or adduced in the first proceeding could be considered in the second. *Id.*

The juvenile court here reasoned that *Newman*'s analysis of the preclusion issue carries over to the jurisdictional context. Relying on *Newman*, the court concluded that new "substantial material facts" will support the filing of a new petition.[4]

The juvenile court then analyzed each of the current allegations in light of *Newman* and the factors identified by the Supreme Court in *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993), in determining whether any of the new allegations were precluded. The court compared the current allegations and the evidence presented in support of them with the allegations and evidence in the Douglas County proceeding. Some of the new allegations, the court concluded, "are substantially the same as those previously dismissed and resulted in presentation of nearly identical testimony and evidence." Those allegations could not be reconsidered, the court reasoned, because disregarding a different circuit court's final decision on an identical issue or claim would be illogical and "contrary to long-held legal doctrine and contrary to public policy."

However, several of the allegations, the court reasoned, involved new substantial material facts. As to W and E, the court focused in particular on the allegation

---

[4] The juvenile court rejected DHS's contention that *any* new evidence could support the filing of a new jurisdictional petition. The court explained: "If DHS's position is correct, with the assertion of a single new fact, DHS could repeatedly file and litigate the exact same allegations against parents in the hope of a more favorable overall decision."

that "father has subjected the child to mental, verbal, and/
or emotional abuse resulting in impairment of the child's
psychological and/or emotional well-being and functioning."
Pierce, the boys' Lincoln County therapist, testified in the
Lincoln County proceeding regarding the psychological and
emotional effects of father's discipline.[5] The court found
that Pierce's testimony was "substantial new material" that
demonstrated that the two boys had suffered harm:

> "Since the jurisdictional hearing in Douglas County,
> [W] and [E] have each engaged in mental health coun-
> seling on a weekly basis. Each child has been diagnosed
> with Post-Traumatic Stress Disorder related specifically to
> their Father's care or treatment of them. The mental health
> counselor testified that treating the children takes time
> because first rapport and trust have to be established and
> the children have to stabilize before treatment can begin.
> [E] took so long to open up to his counselor that a trauma
> screen was not performed until July. The true or full psy-
> chological and emotional impact of any violence or abuse
> experienced by the children in this case was not known to
> the parties at the time of the Douglas County jurisdictional
> hearing. The evidence presented by [E] and [W]'s counselor
> constitutes a substantial new material fact and presents
> new potential safety threats to these children."

Also with respect to W and E, the court found that the evi-
dence substantiated the new allegation that the boys' fear of
father had resulted in a risk of running away or suicide if
faced with the possibility of returning to father's care.

   The court concluded that the allegation that "father
lacks skills necessary to safely parent the child, including
knowledge of appropriate disciplinary practice" was new
and, although it was supported by some of the same evi-
dence that had been presented in Douglas County, there

---

[5] Pierce testified in the Lincoln County proceeding that the traumatic event
that triggered W's symptoms was a punishment in which he was not allowed into
the house to eat or sleep over a period of two days until he finished stacking 200
hay bales. Pierce testified that W's PTSD caused him to feel sad, worthless, and
hopeless; caused him to have psychosomatic symptoms, including sweating, a
racing heartbeat, and shaking hands; and caused him to be paranoid and believe
that "everybody is out to get him." The triggering event for E was being forced
to watch a friend of his father shoot the family dog. E's PTSD was evidenced
through external symptoms, including self-harming behaviors such as hitting
himself, scratching himself, and trying to choke himself with his hands.

were also "new material facts" that were relevant in determining whether father's parenting skills presented a safety threat to the children. The court found that allegation particularly relevant to M, who had not yet been shown to have experienced serious harm by father, but who the court found was nonetheless at a substantial risk of harm because of father's lack of parenting skills. Ultimately, the court found the following allegations to have been established by clear and convincing evidence as to all three children:

> (1)   Mother failed and/or is unable to protect the children from the father's violence.

> (2)   The children have been exposed to violence by the father.

> (3)   Father lacks skills necessary to safely parent the children, including knowledge of appropriate disciplinary practice.

As to W and E, the court found two additional allegations to have been established by clear and convincing evidence:

> (1)   Father had subjected W and E to mental, verbal, and/or emotional abuse resulting in impairment of the children's psychological and/or emotional well-being and functioning.

> (2)   W and E are fearful of the father, do not feel safe in the father's care, and are a suicide or runaway risk if placed in the father's care. The court assumed jurisdiction of all three children based on those allegations.

On appeal, father challenges the trial court's denial of his motion *in limine* and contends further that the court erred in failing to dismiss the Lincoln County allegations altogether based on issue preclusion. We review the trial court's ruling rejecting father's issue preclusion arguments for errors of law. *City of Portland v. Huffman*, 264 Or App 312, 315, 331 P3d 1105 (2014).

Issue preclusion, a doctrine of judicial finality, is a branch of "preclusion by former adjudication" that is based, first, on the "protection of private litigants against the harassing necessity of litigating more than once the same issue or cause of action" and, second, on "the protection of the public's interest in preventing relitigation of matters

once decided." *Bahler v. Fletcher*, 257 Or 1, 6, 474 P2d 329 (1970) (describing policy underpinnings of doctrine of "collateral estoppel," now known as "issue preclusion"). Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact or law has been determined by a valid and final determination in a prior proceeding. *Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990) ("Issue preclusion applies to an issue of either fact or law."). Issue preclusion will preclude a subsequent determination of the same facts or issue when (1) the issue in the two proceedings is identical; (2) the issue was actually litigated in the first proceeding and was essential to a final decision on the merits; (3) the party that sought to be precluded had a full and fair opportunity to be heard on the issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which a court will give preclusive effect. *Nelson*, 318 Or at 104.

Claim preclusion, also a branch of preclusion by former adjudication, is broader than issue preclusion. It may bar litigation of an issue that could have been raised, even if that issue was not actually raised, in an earlier proceeding. *Drews*, 310 Or at 140.[6]

In appropriate contexts, preclusion by former adjudication can apply in dependency cases. For example, in *State ex rel. Juv. Dept. v. Gates*, 96 Or App 365, 372, 774 P3d 484, *rev den*, 308 Or 315 (1989), we held that an order of a juvenile court assuming dependency jurisdiction is a final appealable determination that cannot be reconsidered by another court. We did not explicitly cite claim or issue preclusion in support of our conclusion. But the opinion's

---

[6] Father characterizes his argument as "issue preclusion." But father's assertions that the allegations of the petition are barred and that evidence that *could have* been presented in the Douglas County proceeding could not be presented in the Lincoln County proceeding would seem to bear on claim preclusion, not issue preclusion. *Id.* (Under the doctrine of claim preclusion, "[w]here there is an opportunity to litigate the question along the road to the final determination of the action or proceeding, neither party may later litigate the subject or question."); *see Troutman v. Erlandson*, 287 Or 187, 197, 598 P2d 1211 (1979) (describing components of "*res judicata*," now known as "claim preclusion," to include whether all matters that were subject to the second case could have been litigated in the first case).

significance is its holding that, although a court's continuing juvenile dependency jurisdiction is subject to reevaluation based on changed circumstances, a determination *assuming* dependency jurisdiction is a final, appealable, judgment that cannot be relitigated. *Id*. ("A wardship cannot continue if the jurisdictional facts on which it is based have ceased to exist. *** However, that determination does not include a retrial of the original allegations." (Citation omitted.)).

In contrast, in *Newman*, described above, we held that a second proceeding for termination of parental rights was not precluded by a prior proceeding when there are "new substantial material facts." 49 Or App at 225. Similarly, in *D.H.S. v. S. S.*, 283 Or App 136, 388 P3d 1178 (2016), we held that a 2014 permanency decision not to change a permanency plan to adoption did not preclude the court's subsequent change of plan to adoption, as permanency plans are statutorily subject to reevaluation and change.

As father points out, the requirements for the juvenile court's continuing involvement in permanency and termination proceedings, where the court is continually reassessing the appropriate disposition in light of evolving facts, distinguishes those cases from the dependency jurisdiction context. *See S. S.*, 283 Or App at 144 (citing court's statutory obligation to reassess circumstances every 18 months once jurisdiction is taken); *Newman*, 49 Or App at 226 ("Termination of parental rights proceedings generally arise out of a continuing and cumulative set of circumstances."). When a juvenile court declines to take jurisdiction, the court has no further involvement. We held in *Gates* that a judgment in which the juvenile court assumes jurisdiction is a final, appealable judgment, but we have never addressed the precise issue presented here—whether, when a court has once declined to take jurisdiction, the court is in any way precluded from subsequently assuming jurisdiction. We conclude that the answer is, sometimes.

As a general rule, when a petition alleges jurisdictional facts that are substantially similar to allegations that have been previously litigated, and the evidence in proof of those allegations is no different from evidence the court has previously considered, then the policies of finality, judicial

economy, and fairness embodied in the doctrines of issue and claim preclusion should prevail and preclude relitigation. As the juvenile court here expressed, parties should not be free to relitigate the same facts in the hopes of obtaining a more favorable outcome. In this case, the juvenile court dismissed two allegations based on that rationale.

Beyond that circumstance, dependency cases involve policy considerations that may supersede the policies of judicial finality and fairness underlying claim and issue preclusion. In *Newman*, we cited the best interests of the child as a rationale for deviating from the standard rules guiding application of "collateral estoppel" or "*res judicata*" in the termination context. 49 Or App at 227-28. In a jurisdictional proceeding, the primary considerations are analogous. The welfare of the child is the focus of the court's determination, and the state's purpose in initiating such a proceeding is to intervene as necessary to protect the child. *State ex rel. Dept. of Human Services v. W. L. P.*, 345 Or 657, 664, 202 P3d 167 (2009); *see* ORS 419B.100(1)(c) (juvenile court "has exclusive original jurisdiction" in any case involving a child "[w]hose condition or circumstances are such as to endanger the welfare of the [child] ***"); ORS 419B.331 (permitting court to place child under protective supervision "[w]hen the court determines it would be in the best interest and welfare of a ward"). When the best interests or welfare of a child are implicated, the interests protected by claim and issue preclusion may be relegated to a secondary position. *See Drews*, 310 Or at 141 ("Claim and issue preclusion are subject to a number of exceptions."); *Restatement (Second) of Judgments* § 26 comment f (1982) (claim preclusion may be disregarded in appropriate circumstances when the policies favoring preclusion of a second action are trumped by other significant policies). Those policies, depending on the circumstances, may negate strict adherence to the classic formula for application of issue preclusion, as set forth in *Nelson*.

What types of facts might justify that deviation? In *Newman*, we referred to "new substantial material facts." 49 Or App at 225. That terminology is still apt. When, as here, there are new jurisdictional allegations, or even similar allegations that are based on "new substantial material

facts," (*i.e.*, facts that were either not available or not presented and that likely would have been material to the juvenile court's determination), then the welfare of the child must prevail over the policy underpinnings of claim and issue preclusion that would otherwise bar relitigation. Here, the Lincoln County juvenile court based its jurisdictional determination on evidence concerning the effects of father's discipline on the children's psychological and emotional welfare that had not been presented to or considered by the Douglas County juvenile court. Had that evidence been presented to the Douglas County juvenile court, it likely would have been material to the Douglas County juvenile court's determination. However, the evidence was not presented to the Douglas County juvenile court, and the court therefore did not consider it when it made its determination regarding jurisdiction. In view of those circumstances, we conclude that the Douglas County judgment can have no preclusive effect on the consideration of any evidence relevant to the allegations considered by the Lincoln County juvenile court based on those new substantial material facts.[7]

We also reject father's contention that issue preclusion barred the Lincoln County juvenile court from considering evidence of events that had occurred before the Douglas County juvenile court issued its judgment on May 21, 2019. In view of our holding that the Douglas County judgment has no preclusive effect as to the allegations on which jurisdiction was found, there could be no basis for excluding the prior evidence, if relevant. But our conclusion is also based on an additional reason. In determining whether DHS had met its burden to establish the new allegations by clear and convincing

---

[7] As previously noted, although DHS remained a party in the Douglas County proceeding as required by ORS 419B.875(1)(a)(G), its position then was that jurisdiction was not warranted, because the children were in mother's care, and she could safely parent them. DHS did not attempt to establish in that proceeding that father posed a risk of serious harm to the children, because it had concluded that the children were with a fit parent. In the Lincoln County proceeding, DHS's position had changed due to significant new evidence from Pierce that DHS had had time to consider. Because it asserted then that mother could not protect the children from father, it then had reason to establish the risks of harm that father posed to the children. We need not address and do not preclude other circumstances in which DHS's participation in an earlier juvenile jurisdictional proceeding might balance in favor of application of claim or issue preclusion in a subsequent proceeding.

evidence, the Lincoln County juvenile court was required to evaluate the totality of the circumstances. *See Dept. of Human Services v. W. A. C.*, 263 Or App 382, 394, 328 P3d 769 (2014) (ORS 419B.100(1)(c) "requires the court to consider all of the facts in the case before it and to consider whether, under the totality of the circumstances, the child's welfare is endangered."). As the juvenile court said, "condition[s] and circumstances can be cumulative or have a cumulative effect on a child." The totality of the circumstances includes the present effects of past events on the children's condition. Even if those earlier events were determined by the Douglas County juvenile court to be insufficient, in and of themselves, to provide clear and convincing evidence in support of jurisdiction, they were relevant in the second proceeding if they had any bearing on the children's present circumstances and welfare in relation to the allegations of the Lincoln County petition. The trial court was not free to exclude them.

Father's final contention is that the evidence is insufficient to support the juvenile court's jurisdictional determination. ORS 419B.100(1)(c) provides that a juvenile court may assert dependency jurisdiction over a child whose "condition or circumstances are such as to endanger the welfare of the [child] or of others." As we recently said in *Dept. of Human Services v. C. L. R.*, 295 Or App 749, 754, 436 P3d 92 (2019), "That kind of endangerment exists when the child's condition or circumstances 'create a current threat of serious loss or injury to the child' and there is 'a reasonable likelihood that the threat will be realized.'" (Quoting *Dept. of Human Services v. S. P.*, 249 Or App 76, 84, 275 P3d 979 (2012) (internal quotation marks and citations omitted)). In making that determination, the juvenile court must focus "on the child's current condition and circumstances, not on some point in the past." *Dept. of Human Services v. E. R.*, 295 Or App 749, 754, 436 P3d 92 (2019). "The pertinent conditions or circumstances need not involve the child directly but may be found harmful because they create a harmful environment for the child." *G. A. C. v. State ex rel. Juv. Dept.*, 219 Or App 1, 9, 182 P3d 223 (2008).

The trial court here made extensive findings. The court's findings with respect to W and E were based primarily on evidence about the connection between certain

past conduct—father's discipline—and the boys' present psychological conditions. The court found that father's discipline, which included hitting or spanking the children with a stick, was not reasonable discipline and had had a clearly negative effect on the children, and that if the children were to return to father's home, they would be exposed to a risk of serious loss or injury.[8] The court found that, although M had not experienced discipline to the same extent as her brothers and had not yet been diagnosed with psychological harm, her return to father's home would expose her to a risk of serious harm. *See G. A. C.*, 219 Or App at 14 (a court is authorized to assume jurisdiction under ORS 419B.100 (1)(c) not only when a child has suffered actual harm, but to protect the child from a substantial risk of harm).

We have reviewed the record and conclude that the court applied the correct legal standards in evaluating the evidence and that the record is legally sufficient to support the court's findings as well as the allegations of jurisdiction as to each child.

Affirmed.

---

[8] The court found credible W's testimony that father hit him with a stick four to five times a week and left marks and bruises that hurt. W also testified that father hit him with his fist and his open hand and threw him around. The court found credible M's testimony that all the children were punished with the stick for not finishing their chores or for getting into cereal or junk food without permission.