Argued and submitted December 8, 2022, affirmed March 15, petition for review denied July 20, 2023 (371 Or 308)

In the Matter of R. W. C., Jr.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

R. W. C., Sr.,
*Appellant.*

Jackson County Circuit Court
20JU03120; A178905

526 P3d 1195

Father appeals from an order of the juvenile court requiring him to submit to a psychological evaluation, arguing that the juvenile court did not have authority under ORS 419B.387 to order the evaluation, because the permanency plan for his child had already been changed from reunification to adoption. Alternatively, father argues that the Department of Human Services did not meet its burden to show that the evaluation was needed by father. *Held*: Whether court-ordered treatment or training is needed by a parent for one of the purposes stated in the statute is a question to be answered based on the circumstances of the individual case and is not answered solely by reference to the child's current permanency plan. Here, the juvenile court was authorized under ORS 419B.387, as supported by the record developed at the evidentiary hearing, to order father to submit to a psychological evaluation.

Affirmed.

David J. Orr, Judge.

Holly Telerant, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

In this juvenile dependency case, father appeals from an order of the juvenile court requiring him to submit to a psychological evaluation. On appeal, father argues that the juvenile court did not have authority under ORS 419B.387 to order the evaluation because the permanency plan for his child had already been changed from reunification to adoption. Alternatively, father argues that the Department of Human Services (DHS or department) did not meet its burden to show under ORS 419B.387 that the evaluation was "needed by [father] to correct the circumstances that resulted in wardship or to prepare [father] to resume the care of the ward." We conclude that the juvenile court was authorized under ORS 419B.387, as supported by the record developed at the evidentiary hearing, to order father to submit to a psychological evaluation. Accordingly, we affirm.

We set out the relevant evidence developed below. In July 2020, the juvenile court took jurisdiction over father's child, R, when R was a few months old. Father admitted allegations in the petition that his residential instability and chaotic lifestyle, substance abuse, failure to protect R from mother's neglectful behaviors, and arrest for assault interfered with his ability to safely parent and endangered R. In July 2021, the juvenile court changed R's permanency plan from reunification to adoption. After that change in plan, DHS began pursuing the plan of adoption for R, but also continued to provide services to father.

In March 2022, the department sought a court-ordered psychological evaluation of father, which father opposed. At the evidentiary hearing on that motion, DHS stated that it sought the evaluation to identify any additional barriers father might have to ameliorating the bases for jurisdiction, identifying that father had difficulty understanding information given to him by his treatment providers and arguing that it would be in R's best interests to understand why and address that.

Father's substance abuse counselor, Preston, testified that father was engaging in substance abuse treatment

and had maintained his sobriety for nine months. Father had "pretty good" attendance for group sessions, although sometimes he would show up late or leave early, and he attended "very few" individual sessions because he would fail to show up. Preston also testified that father was maintaining sobriety by cutting things out of his life, and Preston was concerned that, if father opened his life back up, he would return to old behaviors. Preston opined that the psychological evaluation could help him to work with father on addictive behaviors father was still demonstrating, such as isolation, avoidance, and "victim thinking," that put him at risk of relapse. Preston acknowledged that his colleagues had identified father as having a low risk of relapse due to his nine months of sobriety. Preston testified that father was "putting in the effort, but we're not making the gains, and so, my concern would be that we're not able to get the results that he would want out of this consistent with the efforts that he's putting into it."

Stewart, father's counselor from his residential treatment program, also testified. Father had left the program after 30 days to avoid being placed on a behavioral contract. Stewart testified that father struggled the whole time he was in the program, including with following a schedule, attending group sessions, completing chores, and understanding information and instructions. She testified that he was not resistant to doing those things, but rather that he appeared to struggle to understand. Stewart testified that

> "he reported he struggled with comprehending when staff would provide him with instructions \*\*\* [and] we had to explain things multiple times with multiple staff to get him to come to group, to help him understand where he was at in his DHS case because he—like he expected that his child would [be] returned to him very quickly."

As another example, she testified how father would continue to spit or blow mucus out of his nose onto the ground in common areas, despite being reminded repeatedly not to do that and him agreeing not to do it. She opined that a psychological evaluation could help father's providers understand why he struggled to comprehend and remember information and identify additional resources for him.

Rouhier, the DHS caseworker assigned to finalize adoption for R, also testified. She explained that, although R's plan was adoption, DHS's "practice [is] to continue to make reunification efforts as long as parents still have parental rights." Rouhier confirmed that DHS was not required to make reunification efforts after the change in plan to adoption, but that it was DHS's policy to do so when the parent was engaged and cooperative. With father, those continued efforts included meeting with him, offering service referrals, offering him visitation with R, and engaging in case planning. With regard to visitation, father consistently showed up for weekly one-hour visits with R at a DHS center. In January 2022, father's visitation increased to a two-hour in-home or community visit. Rouhier testified that a psychological evaluation would help DHS to identify barriers for father because DHS had concerns with father not engaging in domestic violence services, being able to identify what is safe and not safe in parenting R, and not internalizing what he learned in services. Rouhier also testified that having father submit to the evaluation was in R's best interest because "having a parent who is aware of what their challenges are and has supports in place to address them and is able to put his needs ahead of their own, that is always going to be in his best interest."

The juvenile court ordered father to submit to a psychological evaluation, finding that the witnesses were credible and sincere and that an evaluation would be helpful for father's treatment, particularly noting his inability to remember information and conform his behavior to the rules. The court stated that it easily found present the four factors set out in *Dept. of Human Services v. W. C. T.*, 314 Or App 743, 776, 501 P3d 44 (2021), *called into question by Dept. of Human Services v. F. J. M.*, 370 Or 434, 520 P3d 854 (2022), which were (1) the evaluation is "rationally related to the findings that bring the child into the court's jurisdiction"; (2) the evaluation is "a predicate component of treatment or training of a parent"; (3) "[t]here is a need for treatment or training to correct the circumstances that caused the jurisdictional findings or to prepare the parent for the child's return"; and (4) "[t]he parent's participation

in such treatment or training is in the best interest of the child."[1]

On appeal, father first reprises an argument that he made below that the juvenile court did not have authority under ORS 419B.387 to order him to submit to a psychological evaluation because R's permanency plan had been changed to adoption. That argument raises an issue of statutory interpretation to which we apply our usual methodology of seeking to determine the legislature's intent by examining the statutory text in context, along with any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Here, ORS 419B.387 provides:

> "If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

Father argues that the juvenile court did not have authority to order the evaluation here because, once a child's plan has been changed to adoption, there can no longer be a need for the parent to participate in treatment or training, because the child is not returning to the parent's home. DHS disputes father's reading of ORS 419B.387, pointing out that a change in case planning to adoption is not irreversible and that the evidence was that DHS's policy is to continue providing services while a parent has parental rights. DHS argues that, here, the purpose for the evaluation was to assist DHS in providing services for father, and the plan of adoption did not divest the court of authority to order it.

---

[1] After the juvenile court's decision in this case, the Supreme Court issued its decision in *Dept. of Human Services v. F. J. M.*, 370 Or 434, 520 P3d 854 (2022). In *F. J. M.*, the court addressed whether and under what circumstances a juvenile court could order a parent to submit to a psychological evaluation under ORS 419B.387. The court potentially left open the question of the effect of *F. J. M.* on the factors announced in *W. C. T.*, which were based on ORS 419B.337(2), ORS 419B.343(1)(a), *and* ORS 419B.387. *See F. J. M.*, 370 Or at 440 n 3 (noting that the court's analysis "does not concern that newly recognized standard" announced in *W. C. T.*). Here, however, the parties agree that *F. J. M.* provides the controlling analysis for this case, which arises solely under ORS 419B.387, and, thus, we conduct our analysis under *F. J. M.* and not *W. C. T.*

In addressing the parties' arguments, we begin with the Supreme Court's recent opinion in *Dept. of Human Services v. F. J. M.*, 370 Or 434, 520 P3d 854 (2022). In that case, the court held that a juvenile court could order a parent to submit to a psychological evaluation as treatment or training under ORS 419B.387, as long as the statutory requirements were met. The court explained that those requirements placed a limitation on the court's authority to order treatment or training:

> "The legislature's use of the term 'needed' demonstrates an intent to circumscribe the juvenile court's authority and prevent a court from ordering evaluations and testing in every case to determine *if* a parent has a need for treatment. The legislature further circumscribed the juvenile court's authority by requiring that the ordered treatment be needed by the parent for a particular purpose—that is, the purpose of ameliorating the circumstances that resulted in the wardship or preparing the parent to resume care of the ward. However, even though what is 'needed' is often a matter of degree, the legislature did not impose a requirement of absolute need in the sense that the juvenile court must find that it would be impossible for the parent to correct the circumstances resulting in wardship without engaging in the ordered treatment."

*Id*. at 447 (internal citation omitted; emphasis in original).

Thus, as explained in *F. J. M.*, to order a psychological evaluation under ORS 419B.387, the court must find that the parent "needed" the evaluation for "the purpose of ameliorating the circumstances that resulted in the wardship or preparing the parent to resume care of the ward." *Id*. The crux of father's argument here is that an evaluation can never be "needed" when the case planning for the child is adoption because, at that point, DHS is proceeding with terminating parental rights, which removes any need to address parenting deficits or the circumstances that resulted in the wardship. We do not agree that the statute operates in such a stark manner.

As further explained in *F. J. M.*, the question of whether treatment is needed by a parent is "a fact-specific inquiry that depends on the circumstances of each individual case." *Id*. That is no less true when the plan for a child

has been changed from reunification to adoption. We can readily imagine case-specific circumstances where treatment or training is needed by the parent for the purposes provided in the statute, even when the case planning for the child is adoption. Such circumstances could include a party advocating for a change in plan either back to reunification or to a guardianship plan with continued contact between the parent and child. As pointed out by the state, a change in plan to adoption is not necessarily irreversible.[2] *See Dept. of Human Services v. S. S.*, 283 Or App 136, 144, 388 P3d 1178 (2016) (rejecting issue preclusion argument because "[a] meaningful [permanency hearing] evaluation necessarily means that the prior evaluation is not automatically preclusive"); *see also* ORS 419B.470(6) ("Unless good cause otherwise is shown, the court shall also conduct a permanency hearing at any time upon the request of the department, an agency directly responsible for care or placement of the child or ward, parents whose parental rights have not been terminated, an attorney for the child or ward, a court appointed special advocate, a citizen review board, a tribal court or upon its own motion."). There are any number of circumstances that could occur in an individual case that may prevent, or significantly delay, termination of parental rights after a change in plan to adoption. Based on the particular circumstances of the case, it may be in the child's best interest for a court to order the parent to undertake treatment or training needed to address the circumstances that led to the child's wardship, even after a change in plan away from reunification.

Conversely, nothing in the text of ORS 419B.387 supports father's position that a juvenile court is categorically stripped of authority to order a parent to engage in needed treatment or training while a parent still retains parental rights to the child, but after a change in plan away from reunification, when such treatment or training is in the child's best interests. Rather, the statute says that permissible purposes for the treatment or training are "to correct the circumstances that resulted in wardship *or* to

---

[2] We take judicial notice that that circumstance, in fact, subsequently occurred in this case. In August 2022, the juvenile court entered a permanency plan that changed R's plan to reunification with father.

prepare the parent to resume the care of the ward." ORS 419B.387 (emphasis added). To prepare the parent for the return of the child to the parent's care is only one of the two permissible purposes. We conclude that whether the ordered treatment is "needed" for one of the purposes stated in the statute is a question to be answered based on the circumstances in the individual case and is not answered solely by reference to the child's current permanency plan.[3]

Father also argues that the department failed to meet its burden to show that he "needed" a psychological evaluation as required by ORS 419B.387. As an initial matter, father asserts that the question we must answer— whether father "needed" the treatment—is a legal one; while the state asserts that it is a factual finding. This issue, however, is no different than other issues we must confront in juvenile dependency that require us to determine whether a juvenile court could find that a statutory requirement was met based on the record before it. Thus, we apply our usual standard of review and view "the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Before addressing father's specific arguments, we return to the guidance provided in *F. J. M.* for ordering treatment or training under ORS 419B.387:

"[A]s with many other questions, in determining whether treatment is needed by the parent, a juvenile court must engage in a fact-specific inquiry that depends on the circumstances of each individual case, and its finding of need must be grounded in the evidence presented at the evidentiary hearing. In making that finding, a juvenile court may typically consider a variety of factors, such as (1) the circumstances that resulted in wardship (*e.g.*, substance abuse, mental health issues, other circumstances); (2) the

---

[3] We decline father's invitation to extend our holding in *Dept. of Human Services v. P. W.*, 302 Or App 355, 460 P3d 1044 (2020), beyond the specific facts of that case, which were that mother's parental rights had already been terminated at the time that the juvenile court ordered her to submit to a psychological evaluation.

extent to which the treatment that the court is considering will correct those circumstances or otherwise prepare the parent to resume the ward's care; (3) the availability of alternatives to the treatment that the court is considering that will correct the circumstances that resulted in wardship or otherwise prepare the parent to resume the ward's care; (4) the effectiveness of a parent's prior attempts, if any, to ameliorate those circumstances; and (5) the length of time over which those prior attempts were made. We construe the statute to require that a juvenile court's finding that particular treatment (*e.g.*, a psychological evaluation) is *needed* by the parent must be connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct, and that it must be based in and supported by the evidentiary record. As we have explained, the circumstances of each case must be evaluated independently."

370 Or at 447-48 (emphasis in original).

Against that backdrop, father argues that DHS failed to meet its burden to show that he needed the psychological evaluation to address his parenting deficits. Father argues that the testimony identified generalized concerns about his ability to remember information and that the evaluation was sought to help "identify barriers" father might have. However, father asserts, that generalized concern was not more than "tenuously" connected to the jurisdictional bases as neither of father's service providers described father as having a barrier to his substance abuse treatment. In addition, father argues that the unspecified barriers or services referred to at the hearing were not related to the jurisdictional bases, as he was already successfully addressing his substance abuse, and were not related to his resuming care of R as long as the plan for R remained adoption.

DHS argues that the record supports the juvenile court's finding that father needed the evaluation because, although father had maintained sobriety for nine months, he was at risk of relapse if he did not address his underlying behaviors. Preston, Stewart, and Rouhier all expressed concerns about father's ability to remember and understand information and opined that an evaluation could identify approaches that would allow father to be successful in his recovery. *See F. J. M.*, 370 Or at 445 (stating that treatment

and training encompasses evaluation and testing components and "such components can assist (1) in determining the cause or nature of the circumstances resulting in wardship, (2) in managing those circumstances, (3) in tailoring how a treatment can be effectively delivered, (4) in gauging a treatment's effectiveness, and (5) in identifying other treatment components").

In view of the record, we conclude that the juvenile court was authorized under ORS 419B.387 to order father to participate in a psychological evaluation. At the hearing, the juvenile court tied the psychological evaluation to father's treatment for substance abuse, because relapse remained a danger, and specifically referenced the testimony that father was unable to conform his behavior to the rules and could not remember information given to him. The court also stated that it found the testimony sincere and that it did not believe DHS was seeking the evaluation as part of a fishing expedition or to use in the termination of parental rights case. As such, we understand the juvenile court to have ordered the evaluation as treatment, given the court's finding that father has evinced barriers to taking in information and addressing his concerning behavior, and not as a discovery tool to determine if father had such barriers to treatment, as asserted by father. Viewing the reasonable inferences from the evidence in favor of the court's disposition, we conclude that the juvenile court finding that father needed the psychological evaluation to address his substance abuse, which was one of the jurisdictional bases for R's wardship, was not in error. As a result, we affirm the juvenile court's order.

Affirmed.