***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted May 24, 2023, affirmed August 16, 2023

In the Matter of J. H. G., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. H.,
*Appellant.*

Marion County Circuit Court
21JU03359; A179626 (Control)

In the Matter of E. H. G., a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. H.,
*Appellant.*

Marion County Circuit Court
21JU03360; A179627

Tiffany Underwood, Judge pro tempore.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

In this consolidated juvenile dependency case, mother appeals from judgments asserting jurisdiction over mother's two children on the additional basis that mother suffers from mental health problems, and she also appeals from judgments requiring her to submit to a psychological evaluation.[1] We affirm.

In August 2021, the juvenile court entered jurisdictional judgments as to E and J. At that time, E was five years old, and J was one. As to both E and J, mother admitted that she lacked "the skills to safely and appropriately parent" them, thereby placing them at risk of harm, and she also admitted that "[d]espite having been offered services to address [her] challenges that interfere with her ability to appropriately provide for the health and welfare needs of her children, she has been unable to remedy the problem." In the jurisdictional judgment as to E, mother also admitted that E was "vulnerable due to unmet medical, dental and behavioral needs," and that mother had "been unable or unwilling to get appropriate care for the child placing the child at risk of harm and/or resulting in harm to the child."

After DHS removed the children from mother's care, mother participated in services aimed at reunification. She regularly and consistently visited the children, and she completed a parenting class and an anger management class. Mother submitted to a mental health assessment and participated in mental health counseling, resulting in a diagnosis of "complex post-traumatic stress disorder." Mother engaged in parenting training, and she attended team meetings.

Nevertheless, by April 2022, DHS became concerned that the services provided to mother "didn't seem to be sticking," and mother continued to have problems with anger management. In May 2022, DHS filed amended dependency petitions as to E and J, alleging that mother's

---

[1] We use the phrase "additional basis" because, as explained in more detail below, the juvenile court originally took jurisdiction on different grounds and the Department of Human Services (DHS) subsequently filed amended dependency petitions focusing on mother's mental health problems. Subsequently, the juvenile court took jurisdiction over mother's two children on that "additional basis."

"mental health problems interfere with her ability to safely parent" the children. The juvenile court held a trial on the new petitions in June and July 2022, and it concluded that the state met its burden of proving the additional basis for jurisdiction. In its dispositional judgment and subsequent review judgments, the juvenile court ordered mother to submit to a psychological evaluation. Mother appeals.

When reviewing a juvenile court's assertion of jurisdiction, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Where, as here, the state alleges an additional basis for jurisdiction, we consider whether "there is sufficient evidence, from which a reasonable factfinder could conclude by a preponderance of the evidence, either that a current risk of harm to [the children] exists from the additional allegation standing alone," or "the additional allegation contributes to or enhances the risk associated with the already established bases of jurisdiction." *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 443-44, 295 P3d 672 (2013).

In her first two assignments of error, mother argues that DHS failed to prove that her mental health condition exposed E and J to a current risk of harm. We conclude that the evidence was legally sufficient to permit the juvenile court to assert jurisdiction on that basis. The juvenile court relied on mother's history of yelling and screaming at the children on multiple occasions, "mother's testimony regarding her anxiety and stress over parenting," and mother's express testimony that E had "treated her badly since [E] was three." The juvenile court found a nexus between those issues and the children's safety, stating that the issues needed "to be addressed before the children will be safe from emotional harm."

The court further observed that mother continued to have trouble regulating her emotions, which appeared to be related to her mental health condition, and the juvenile court found that it posed "a current ongoing risk to the

children." Mother became "easily frustrated" when providing care for her children, even "in a controlled environment during supervised visits." At one visit with J, mother had problems changing his diaper, became frustrated, yelled at him, and "flipped him really hard," causing J to hit his head. During visits, mother accused E and J of treating her badly and "acting like their father." Despite completing an anger management class, mother continued to yell at her children. Considering that evidence, it was sufficient for the juvenile court to conclude that the additional basis for jurisdiction—mother's mental health problems—posed a current risk of harm to the children, or it contributed to and enhanced the risk to the children associated with the other bases of jurisdiction.

In her third and fourth assignments of error, mother asserts that the juvenile court erred by ordering her to submit to a psychological evaluation. In *Dept. of Human Services v. F. J. M.*, 370 Or 434, 446, 520 P3d 854 (2022), the Supreme Court held that a juvenile court could order a parent to submit to a psychological evaluation as treatment under ORS 419B.387, as long as the statutory requirements were met. To order a psychological evaluation, the juvenile court must find that the parent "needed" the evaluation for "the purpose of ameliorating the circumstances that resulted in the wardship or preparing the parent to resume care of the ward." *Id.* at 447.

The question of whether treatment is needed by a parent is "a fact-specific inquiry that depends on the circumstances of each individual case." *Id.* The finding "must be connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct, and * * * it must be based in and supported by the evidentiary record." *Id.* at 448. In reviewing the juvenile court's decision to order a psychological evaluation, "we apply our usual standard of review and view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. R. W. C.*, 324 Or App 598, 605, 526 P3d 1195 (2023) (internal quotation marks omitted).

Here, the juvenile court did not err. As explained above, the record was legally sufficient for the juvenile court to find that mother's mental health problems provided an additional basis for jurisdiction over both children. The need for a psychological evaluation is directly connected to that jurisdictional basis. In addition, the evidentiary record shows that, despite being provided services since the juvenile court originally took jurisdiction in April 2021, mother continued to have problems regulating her emotions, she continued to speak inappropriately to E and J, and she regularly lost her temper with them during visits. Because mother's prior attempts over a significant length of time to remedy the problems were not effective, a psychological evaluation is needed to determine what further services DHS could provide to make it possible for E and J to safely return to mother's care. *See F. J. M.*, 370 Or at 447-48 (noting that some factors that a juvenile court may consider include "the circumstances that resulted in wardship," "the effectiveness of a parent's prior attempts *** to ameliorate those circumstances," and "the length of time over which those prior attempts were made"). The evidentiary record supports the need for a psychological evaluation, and the juvenile court thus did not err by ordering one.

Affirmed.