Argued and submitted September 6, Reversed and remanded for entry of judgment omitting order for mental health assessment; otherwise affirmed October 25, 2023

In the Matter of M. L. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. A. G.,
*Appellant.*

Jackson County Circuit Court
22JU06052; A180886

538 P3d 587

In this juvenile dependency case, father appeals from a judgment of jurisdiction and disposition in which the juvenile court ordered father to undergo a mental health assessment. "Father raises two assignments of error. First, father asserts that the juvenile court erred under ORS 419B.387 because the state did not present adequate evidence that father needed the assessment to correct the circumstances that led to the wardship. Second, father asserts that the court erred if it relied on ORS 419B.337(2) as a source of authority for the order." *Held*: The state did not present sufficient evidence to prove that father needed the assessment or that the assessment was "connected more than tenuously" to the jurisdictional bases, as required by *Dept. of Human Services v. F. J. M.*, 370 Or 434, 520 P3d 854 (2022). Because DHS disclaims any reliance on ORS 419B.337(2) as an alternate source of authority for the juvenile court's order, we do not reach father's second assignment of error.

Reversed and remanded for entry of judgment omitting order for mental health assessment; otherwise affirmed.

David G. Hoppe, Judge.

Elena Cristina Stross, Deputy Public Defender, argued the cause for appellant. On the briefs were Shannon Storey, Chief Defender, Juvenile Appellate Section, and Tiffany Keast, Deputy Public Defender, Office of Public Defense Services.

Brad Mullen, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Reversed and remanded for entry of judgment omitting order for mental health assessment; otherwise affirmed.

## MOONEY, J.

In this juvenile dependency case, father appeals from the judgment of jurisdiction and disposition in which the juvenile court ordered father to undergo a mental health assessment and follow any resulting recommendation. Father raises two assignments of error, asserting that "the juvenile court erred under ORS 419B.387 in ordering father to submit to a mental health assessment," and that "to the extent the juvenile court relied on ORS 419B.337(2) as a supplementary or alternative source of authority for its order ***, it plainly erred." We conclude that there was insufficient evidence under ORS 419B.387 for the court to order father to submit to a mental health assessment. We need not, and do not, reach father's second assignment of error because DHS has disclaimed any reliance on ORS 419B.337(2) as an alternative source of authority for the juvenile court's order. Thus, as presented by the parties, the sole issue is whether the order to undergo a mental health assessment was authorized by ORS 419B.387 on this record. *Dept. of Human Services v. F. J. M.*, 370 Or 434, 443, 520 P3d 854 (2022). We reverse the judgment and remand with direction to enter a judgment omitting the order for a mental health assessment; we otherwise affirm.

We review whether a juvenile court's order is authorized by a particular provision of ORS Chapter 419B for legal error. *Dept. of Human Services v. J. R. F.*, 351 Or 570, 578-79, 273 P3d 87 (2012). If the order is authorized, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

This was the second formal contact between the Oregon Department of Human Services (DHS) and father regarding his daughter, M. The first contact was in 2021. At that time, DHS filed its first dependency petition in the juvenile court. Jurisdiction was established following father's admission that his alcohol abuse interfered with his ability to safely parent M and his failure to contest DHS's allegation

that he "subjected [M] to inappropriate physical discipline and emotional mistreatment resulting in impairment of [M]'s emotional well-being and functioning." Jurisdiction was ultimately dismissed and wardship was terminated after a hearing on father's uncontested motion to dismiss.

DHS became involved with this family again when it received a report that father's wife and stepdaughter had "physically assaulted" M, prompting a neighbor to call the police. The assigned DHS caseworker testified that M sustained physical injuries as a result of the altercation, including a "pretty significant" bump on the back of her head. Toward the end of the altercation, father tried to intervene and pull his wife and stepdaughter away from M but indicated in a later interview with DHS that he was aligned with his wife and stepdaughter.

DHS filed the current dependency petition with the juvenile court, alleging that M was within the jurisdiction of the court due to circumstances that endangered her welfare. It initially alleged several bases for jurisdiction that concerned father's ability to safely parent M, but DHS later filed an amended petition, reflecting a single, negotiated allegation, which father admitted: that he was "unable to manage [M]'s safety and behavior in the home, which interferes with his ability to safely parent" M. The court accepted father's admission and asserted jurisdiction over M on that basis. The court moved immediately to the dispositional hearing.

DHS requested that the juvenile court order father to participate in "mental health services" and it offered testimony from its caseworker and a "Family Report" in support of that request. The caseworker testified that the family was facing the same "issues" that it had been facing in the previous dependency case. He testified that he thought father was "a victim of domestic abuse" perpetrated by his current wife. The caseworker testified that he had a second-hand report from father's mother that father had been exposed to "significant trauma" as a child, and that he had not "dealt with the trauma and how it affects him." The caseworker offered his belief that father's trauma "manifest[ed] in [his] being in a relationship that is not healthy for him. And is not safe for [M]."

The juvenile court, at the conclusion of the hearing and as pertinent here, made the following oral findings and comments:

"[THE COURT]:   *** The State has met their burden. I don't believe that [the DHS caseworker] is doing this in any way shape or manner to harass [father]. In fact, if anything [the caseworker has] been protective of [father]. Did not get into the family history and background regarding why he believes a mental health assessment needs to be done regarding significant or substantial unresolved trauma or unprocessed trauma. And his opinion was [that father] was not the domestically abusive or physically abusive [parent], but in fact is the one being abused. So, given all those issues, I think it would be a great benefit to [father] and to assist in his ability to parent [M]. *** If he goes through the assessment in a protective and careful way and is able to deal with some of the trauma and learn how to better parent [M], then maybe [M] a year or two from now will want to engage with her [f]ather. And not engage in text battles a week before a hearing. So, I am going to find it's absolutely [] rational and related. It would be a benefit to [M]. I didn't hear much about the particular treatment program or the components, however, my understanding is that the agencies will be flexible regarding the release of information. The type of assessment. What *** needs may be found. But given what I've heard I absolutely believe that it is necessary going forward if we're going to make any attempt to preserve this relationship between [f]ather and [d]aughter to have the mental health assessment done. And if recommended a treatment program that is narrowly tailored on his issues. So, that he can deal with his own trauma and be a better parent toward [M]. So, I will make the necessary findings [] regarding the action agreements and regarding the case as presented to me ***."

The juvenile court later signed and entered its judgment of jurisdiction and disposition which, among other things, ordered father to:

"comply with the terms of the Action Agreement / Letter of Expectation submitted to the court and adopted to the court's written findings as part of the Supplemental Confidential Exhibit and comply with any orders of this court as stated on the record at this hearing."

The pertinent language contained in the action agreement provides:

> "[Father] will complete a Mental Health Assessment. He will follow any recommendations made by the mental health provider. He will engage in any and all treatment recommended by the mental health provider. He will learn to identify and understand his mental health needs and get the treatment he needs to become a safe parent to his child."

Father's appeal of that judgment is before us now.

In his first assignment of error, father asserts that the juvenile court erred under ORS 419B.387 in ordering the mental health assessment, arguing that DHS failed to offer sufficient evidence to "prove that father 'needed' a mental health evaluation and any recommended treatment," and that it failed to connect any need that it did prove to father's ability to "correct the circumstances that resulted in the wardship ***." In particular, father argues that "[t]he department's evidence did not establish that father's trauma had any relation to 'domestic abuse,' and without such evidence there is no link" between father's purported mental health needs and his alleged inability to protect M from his wife. DHS disagrees and points to the caseworker's testimony that father had "significant trauma," that an assessment and subsequent treatment would help father address that trauma, and that the caseworker was unaware of "any other services that would help father address his issues."

ORS 419B.387 provides that a juvenile court may order a parent to participate in treatment or training if, after an evidentiary hearing, it finds that the "treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward[.]" The use of the word "needed" in ORS 419B.387 signifies an intent of the legislature to "prevent a court from ordering evaluations and testing in every case to determine *if* a parent has a need for treatment." *F. J. M.*, 370 Or at 447 (emphasis in original). Although the statute does not impose a "requirement of absolute need," to qualify as a "needed" treatment, the treatment "must be connected more than tenuously to the jurisdictional bases" the treatment is

intended to correct, and it must be "supported by the evidentiary record." *Id.* at 447-48.

To find that a treatment requested by DHS is more than tenuously connected to the jurisdictional bases, a juvenile court must "engage in a fact-specific inquiry." *Id.* at 447. It must consider a variety of factors, such as

> "(1) the circumstances that resulted in wardship (*e.g.*, substance abuse, mental health issues, other circumstances); (2) the extent to which the treatment that the court is considering will correct those circumstances or otherwise prepare the parent to resume the ward's care; (3) the availability of alternatives to the treatment that the court is considering that will correct the circumstances that resulted in wardship or otherwise prepare the parent to resume the ward's care; (4) the effectiveness of a parent's prior attempts, if any, to ameliorate those circumstances; and (5) the length of time over which those prior attempts were made."

*Id.* The circumstances in each case will require an independent analysis of those factors, *id.*, and the weight that the court gives to those factors will necessarily vary depending on the circumstances of each case. The requirement that a proposed treatment be connected more than tenuously to the jurisdictional bases, however, seems to emphasize the need for the juvenile court to critically assess the evidence produced on the second *F. J. M.* factor—the extent to which a treatment will correct the circumstances at issue—as it determines whether to order the requested treatment. The following admonishment in *F. J. M.* illustrates that point:

> "ORS 419B.387 requires a finding that the ordered treatment is needed by the parent. Although we are mindful of the press of court business, we encourage courts, when issuing orders under ORS 419B.387, to clearly explain why, based on the evidence, the ordered treatment is *needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume care of the ward*."

*Id.* at 452 n 8 (emphasis in original); *see also Dept. of Human Services v. R. W. C.*, 324 Or App 598, 607, 526 P3d 1195 (2023) (concluding that a juvenile court did not err in ordering a psychological evaluation where it specifically

identified father's needs, tied the evaluation to those needs, and explained how the treatment would address them).

We turn to the case at hand. The burden was on DHS to support its request for a court order for a mental health assessment with evidence sufficient to establish (1) the need for the assessment, and (2) a more than tenuous connection between the requested assessment and the jurisdictional basis—father's inability "to manage [M]'s safety and behavior in the home."

The testimony of the DHS caseworker on which DHS relies is essentially that the caseworker had received third-party reports that father had suffered some sort of trauma as a child, and that a mental health assessment would benefit father in dealing with his childhood trauma and, thus, in becoming a better parent for M. In the absence of evidence about what the childhood trauma consisted of, and without competent evidence that treatment for that trauma is needed and that such treatment would be more than tenuously connected to the jurisdictional basis in this case, we conclude that the juvenile court erred in ordering the requested mental health assessment and recommended services. Notwithstanding the juvenile court's comments that the caseworker was being "protective" of father by not getting "into the family history and background regarding why he believes a mental health assessment needs to be done regarding significant or substantial unresolved trauma or unprocessed trauma," DHS was required to meet its burden of establishing the need for the assessment and its more than tenuous connection to the jurisdictional basis through evidence. The caseworker's beliefs about what would be helpful, unsupported by competent evidence, is not enough.

Reversed and remanded for entry of judgment omitting order for mental health assessment; otherwise affirmed.