798 September 5, 2024 No. 641

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A.-J. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

A. R. F.,
*Appellant.*

Benton County Circuit Court
23JU01606; A182249 (Control), A182252

Locke A. Williams, Judge.

Submitted March 1, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Kyle Sessions, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

In this consolidated juvenile dependency case, father appeals judgments of jurisdiction and disposition. When his child, A, was born in March 2023, both she and mother tested positive for methamphetamine. In July, after a trial on jurisdiction, the juvenile court found that the Department of Human Services (DHS) proved allegations related to father's substance use and residential instability. The following month, after a dispositional hearing, the juvenile court committed A to the legal custody of DHS with a case plan of reunification with her parents.[1] On appeal, in his first three assignments of error, father argues that the juvenile court erred in asserting jurisdiction over A. In his fourth assignment of error, father contends that the juvenile court should not have ordered him to participate in a mental health assessment. We conclude that the record contains legally sufficient evidence to support the juvenile court's assertion of jurisdiction and also its order of a mental health assessment and, accordingly, we affirm.

Since *de novo* review is neither requested nor warranted in this case, we view "the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). "To establish a basis for juvenile court jurisdiction for purposes of ORS 419B.100(1)(c), the state must prove, by a preponderance of the evidence, that a child's welfare is endangered because, under the totality of the circumstances, there is a current threat of serious loss or injury to the child that is reasonably likely to be realized." *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 19, 383 P3d 931 (2016) (citation and internal quotation marks omitted).

Reviewed under that standard, the record contains sufficient evidence to support the juvenile court's determination that father's substance use and residential

---

[1] Mother admitted that her substance use and residential instability interfered with her ability to safely parent the child. Mother is not a party to this appeal.

instability interfered with his ability to safely parent his newborn child. Although he claimed that his last methamphetamine use occurred about four months before A's birth in March 2023, two DHS employees testified that they believed that father was under the influence of a stimulant at a May 2023 court hearing and a June 2023 visit with A. They based their assessments on father's dilated pupils, his jerky movements, his agitation, and his inability to sit still. There was also evidence that father fell asleep during visits with A and that he sometimes left visits for no apparent reason. That evidence supports the juvenile court's finding of a nexus between father's substance use and a current threat of harm to A.

Regarding father's residential instability, father lived primarily in a minivan, lacked access to basic utilities, including water and electricity, and routinely ran out of food by the middle of the month because he had no stable place to store cold food. A caseworker testified to concern that father would be unable to keep A's formula safe if she were living with him in the van. When considered alongside evidence of father's recent substance use and A's young age, his residential instability supports the assertion of jurisdiction over A. *See N. P.*, 257 Or App at 640 (explaining that "our function is limited to determining whether the evidence was sufficient to permit the challenged determination").

In his fourth assignment of error, father argues that the juvenile court erred in ordering a mental health assessment. "[T]o order a psychological evaluation under ORS 419B.387, the court must find that the parent 'needed' the evaluation for 'the purpose of ameliorating the circumstances that resulted in the wardship or preparing the parent to resume care of the ward.'" *Dept. of Human Services v. R. W. C.*, 324 Or App 598, 603, 526 P3d 1195, *rev den*, 371 Or 308 (2023) (quoting *Dept. of Human Services v. F. J. M.*, 370 Or 434, 447, 520 P3d 854 (2022)). To qualify as needed treatment, the treatment "must be connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct," and the reasons for the treatment "must be based in and supported by the evidentiary record." *F. J. M.*, 370 Or at 448.

Here, the record supports the juvenile court's order. Father testified that he "felt like there has been something wrong with my brain for a while." He was paranoid that people were acting against him, and a case note suggested that he used substances to self-medicate his mental health issues. That record supports the juvenile court's determination that a mental health assessment was necessary to assist DHS in focusing its efforts to ameliorate the circumstances that resulted in the wardship.

Affirmed.