624 December 4, 2024 No. 881

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of J. C.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. C.,
*Appellant.*

Douglas County Circuit Court
23JU01482; A184045

Ann Marie Simmons, Judge.

Submitted October 4, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Tiffany Keast, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this juvenile dependency case, mother appeals from an order directing her to participate in a psychological evaluation and from an order denying her motion to dismiss jurisdiction over her child, J, who was 10-months old at the time the proceedings began. After reviewing the parties' arguments and the record, we conclude that there is sufficient evidence to support the juvenile court's order for a psychological evaluation as required by ORS 419B.387 to address a jurisdictional basis. Further, we conclude that there is sufficient evidence that the original basis of jurisdiction has not been ameliorated and still poses a threat of serious loss or injury to J. Accordingly, we affirm.

Although the parties are familiar with the underlying factual and procedural history, we briefly set out in this nonprecedential memorandum opinion some of the undisputed background details for context. In April 2023, when J was about one-month old, the juvenile court asserted jurisdiction over J based on mother's admission that she "lacks the basic parenting skills to meet the basic needs" of J. Since then, mother has participated in a number of services aimed at developing her parenting skills. Although mother initially made progress, there is evidence in the record that she had been regressing in the last few months leading up to the hearing. In December 2023, mother moved to dismiss jurisdiction over J, and the Department of Human Services (DHS) requested that the juvenile court order mother to participate in a psychological evaluation. After hearings on both issues, the juvenile court ordered the psychological evaluation and denied the motion to dismiss. This timely appeal follows.

Neither mother nor DHS has requested *de novo* review, and this is not an exceptional case in which we would exercise our discretion to do so. *See* ORS 19.415(3)(b); ORAP 5.40(8)(c) (explaining that we exercise our discretion to review *de novo* "only in exceptional cases"); ORAP 5.40(8)(d) (outlining nonexclusive list of criteria relevant to the exercise of discretionary authority to review *de novo*). Therefore, we view the evidence in the light most favorable to the juvenile court's disposition as supplemented and buttressed by

permissible derivative inferences and assess whether, when so viewed, the record was legally sufficient to permit that outcome. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013); *Dept. of Human Services v. R. W. C.*, 324 Or App 598, 605, 526 P3d 1195, *rev den*, 371 Or 308 (2023).

We begin with mother's first assignment of error challenging the order directing her to participate in a psychological evaluation. Mother contends that DHS failed to prove that she "needed" a psychological evaluation to ameliorate her lack of parenting skills and that the psychological evaluation was not "more than tenuously related" to the jurisdictional basis. Mother further asserts that the conclusory opinions and concerns of the DHS caseworker provide insufficient evidence to support the juvenile court's order. We disagree with mother's arguments.

ORS 419B.387 provides:

"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

In determining whether treatment is "needed" by the parent, the court engages in a fact-specific inquiry that depends on the circumstances of the individual case. *Dept. of Human Services v. F. J. M.*, 370 Or 434, 447, 520 P3d 854 (2022); *see also id.* at 447-48 (outlining five nonexclusive factors that a juvenile court may typically consider when evaluating the circumstances of each case). Moreover, the juvenile court must determine that the particular treatment is "connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct, and that it must be based in and supported by the evidentiary record." *Id.* at 448.

Here, the evidence in the record shows that mother may have a cognitive impairment or psychological condition that is impacting her ability to learn parenting skills. That is, although she does not have a recent psychological

diagnosis, mother told DHS that she is on the autism spectrum, and she was being treated for depression, anxiety, and post-traumatic stress disorder. Pynch, a DHS caseworker, testified that, although mother has been involved in extensive services and parenting coaching programs, her progress in learning parenting skills has regressed since October 2023. Pynch further testified that, despite mother's progress with learning some basic skills such as feeding J when J was younger, she does not appear to have an understanding of what J's limitations and needs are as J grows, starts moving around, and starts eating solid foods.

Pynch explained that DHS was unable to move forward with more effective services without knowing mother's diagnosis because there was a "need to understand how [mother], essentially, can understand how to, to parent her child. We need to understand how she understands, how she learns, how she perceives reality *** in terms of [J]." In sum, the evidence demonstrates that, despite engaging in services for almost a year, mother is struggling to internalize parenting strategies and to adapt her parenting skills to J's changing needs. *See F. J. M.*, 370 Or at 448 (explaining that the juvenile court may consider factors including "the effectiveness of a parent's prior attempts" to ameliorate the basis of jurisdiction and "the length of time over which those prior attempts were made"). Thus, there is sufficient evidence to support the juvenile court's determination that a psychological evaluation is needed for DHS to determine what services would be more effective for mother so that she can learn basic parenting skills to care for J as J continues to develop. Therefore, the trial court did not err in ordering mother to participate in a psychological evaluation.

Turning to mother's second assignment of error, we address whether the juvenile court erred in denying mother's motion to dismiss. At the time of mother's motion, the permanency plan was reunification. Mother asserts that the witnesses' concerns about J's safety were based on unspecified harm, which is insufficient to satisfy the requirement that DHS identity the type, degree, and duration of the harm. Mother further argues that DHS did not adduce sufficient evidence of a current risk of harm to J because, even

if DHS proved a risk of harm, any safety incidents occurred at least two months before the hearing and thus any harm was no longer current.

When a parent moves to dismiss jurisdiction, and the permanency plan is reunification, the proponent of continued jurisdiction has the burden to prove, by a preponderance of the evidence, that the facts upon which jurisdiction is based persist such that they continue to "pose a current threat of serious loss or injury that is reasonably likely to be realized." *Dept. of Human Services v. J. M.*, 275 Or App 429, 441, 364 P3d 705 (2015), *rev den*, 358 Or 833 (2016). The risk of harm must be current and nonspeculative. *Id.*

The juvenile court denied mother's motion to dismiss, reasoning that mother "appears unable to consistently attend to safety issues as basic as paying attention to what her child is doing on a very consistent basis in the visitation time that she has"; that there have been "more than four instances of this child being at risk during supervised parenting time when somebody was there to intervene"; and that mother does not understand the risks to J from her behavior. We conclude that, although there is evidence that mother corrects unsafe behavior when prompted, there is evidence in the record to support the juvenile court's determination that "the safety risk associated with mother's lack of basic parenting skills still exist and that they would be realized if this case were dismissed."

Here, there is evidence that mother has difficulty identifying safety threats to J. For instance, there is evidence that mother has given J foods that are dangerous for young children to eat and has given J objects that are choking hazards. Moreover, mother was on her phone for most of the time during her visits with J, and she was convinced that J was sick at almost every visit even when J was healthy. Further, multiple witnesses, who have observed mother's parenting, testified to concerns about mother's ability to parent unsupervised. For example, Hanika, who works as a family-time coordinator at DHS and observed mother during visits with J, testified that he believes that J would be in danger if J were in mother's unsupervised care because mother "still needs to have a safety provider

there with her to help her with these cues from [J] and also being able to understand what is safe and what is not as far as where to, where to place [J]. Just common 24/7 advice is what she needs." Accordingly, because there is sufficient evidence in the record that the basis for jurisdiction persists and that mother's inability to meet the basic safety needs of J is a nonspeculative risk of harm that is reasonably likely to be realized, the juvenile court did not err in denying mother's motion to dismiss jurisdiction.

Affirmed.