170 April 29, 2026 No. 352

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. K. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. S.,
*Appellant.*

Lane County Circuit Court
23JU03830; A189060

Valeri L. Love, Judge.

Submitted March 19, 2026.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Mother appeals a permanency judgment for her child, M, whose permanency plan is guardianship. Mother and the Oregon Department of Human Services (ODHS) had jointly moved to change the plan back to reunification, but the juvenile court denied that request and continued the plan of guardianship. On appeal, mother assigns error to those rulings, arguing that the evidence showed that M could be safely returned to mother within a reasonable time and that the juvenile court erred in finding otherwise. ODHS, appearing as respondent on appeal, concedes the error; that is, as below, it agrees with mother that the plan should be changed back to reunification.[1] We do not accept the concession. The juvenile court was not persuaded by the evidence to change the plan, and, under the applicable standard of review, we cannot say that it was required to change the plan as a matter of law. Accordingly, we affirm.

*Standard of review.* Mother has not requested *de novo* review, nor do we choose to provide it.[2] We therefore "are bound by the juvenile court's factual findings * * *, so long as there is any evidence in the record to support them, and we assume that the juvenile court found all facts necessary to its ruling, even if it did not do so explicitly." *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). We review a juvenile court's decision on a change of permanency plan for legal error. *Id.* We "do that by examining whether the facts explicitly and implicitly found by the juvenile court, together with all inferences reasonably drawn from those facts, were legally sufficient to support the juvenile court's determination." *Id.*

*Facts.* Mother is M's sole legal parent. ODHS removed M shortly after his birth in June 2023, based on concerns relating to mother's methamphetamine use and pattern of involvement in domestically violent relationships, including her relationship with Whipple (who is not M's father) that began around January 2023. The same issues

---

[1] We express no opinion on the propriety of mother identifying ODHS as the respondent on appeal, or ODHS conceding error, in these circumstances.

[2] We have discretion to provide *de novo* review in equitable proceedings, ORS 19.415(3)(b), but will do so only in "exceptional cases," ORAP 5.40(8)(c).

previously resulted in ODHS involvement with another of mother's children. Whipple has a significant history of violence, including domestic violence against a previous partner in the presence of her child.

In October 2023, the juvenile court asserted dependency jurisdiction over M based on mother's admission that she "needs the assistance of the court and DHS to maintain sobriety, maintain wellness, build a support network and maintain safety for herself and her child." In November 2023 and June 2024, mother sought restraining orders against Whipple. The November 2023 order was issued but dismissed at mother's request in June 2024. A month later, mother sought a new order. Around the time of the first restraining order, Whipple, who had told mother that he would take M from her, tried to pick up M from daycare without mother's knowledge or authorization, which caused mother concern that Whipple might abduct M.

In October 2024, the court changed M's permanency plan to guardianship. In December 2024, while mother was several months pregnant with Whipple's child, mother and Whipple had a dispute that resulted in the police being called and mother bleeding from the cheek. Mother stated that during that dispute Whipple had stolen her storage unit key and smashed her cellphone.

In January 2025, mother and Whipple moved into sober housing together as managers of the home. On July 1, 2025, mother gave birth. At the time of the hearing resulting in the judgment on appeal, mother and Whipple had been coparenting their infant child for approximately two months without any ODHS involvement.

In August 2025, the juvenile court held a permanency hearing for M, at which ODHS asked the court to change M's permanency plan back to reunification. Mother joined that request; M did not. ODHS and mother argued that it was appropriate to change the plan back to reunification because mother had maintained her sobriety and was participating in a variety of services, including a batterers' intervention program, and because mother and Whipple were coparenting an infant without ODHS assistance.

Regarding mother's relationship with Whipple, which ODHS had previously identified as an obstacle to reunification, ODHS argued that mother had made progress in identifying the risks of that relationship and noted that she and Whipple had drafted a safety plan that reflected, at least implicitly, a recognition that the relationship had been violent in the past. The plan identified steps that mother and Whipple would take to reduce the risk of that occurring again. Mother had drafted an additional part of the safety plan, which was not shown to Whipple, indicating what steps she would take if the relationship were to become violent again.

The court was not persuaded by ODHS's and mother's view of the evidence regarding risks from domestic violence. It noted that drug use was no longer a concern in the case. However, it found that mother could not "recognize red flags for domestic violence and associated safety risks in intimate relationships and has made essentially zero progress in that regard." In a lengthy letter opinion, the court delved into mother's three psychological evaluations in the record and made detailed findings regarding the pattern of mother's relationships and the history of her relationship with Whipple. It found that mother had been unable to sustain changes in the pattern of her interpersonal relationships, that she had been "disingenuous about her desire for change," and that she had been dishonest throughout the case. The court noted that the recommendations of the most recent psychological evaluation had not been followed, and it noted in particular that mother's participation in batter's intervention—which it viewed as representing an incorrect belief on mother's part that she bore responsibility for some of the violence in the relationship—evinced "more minimization" rather than a positive step. The court denied the request to change the plan back to reunification.

*Analysis.* The juvenile court understood that ODHS and mother, as the parties requesting a change of plan, had the burden to prove, by a preponderance of the evidence, that M could safely be returned to mother's home within a reasonable period of time. The parties appear to have agreed with the juvenile court, and that continues to be

true on appeal, so we assume that is the correct standard. *See generally Dept. of Human Services v. R. W. C.*, 324 Or App 598, 604, 526 P3d 1195, *rev den*, 371 Or 308 (2023) (discussing the possibility that a plan may be changed back to reunification).

On appeal, we do not perceive mother to challenge any of the juvenile court's factual findings as lacking evidentiary support. Mother instead advances two reasons that, in her view, she and ODHS "met [the] burden" of proving that M could safely be returned home within a reasonable time. First, mother points to her "significant progress in remedying her historical parental deficits," as "well-illustrated by her present ability to safely parent her newborn without any state intervention at all," and argues that any attempt to establish a guardianship over M is "likely to fail" given current circumstances. Second, mother cites the legislature's recognition in the juvenile code of a "strong preference that children live in their own homes with their own families," ORS 419B.090(5), as supporting changing the plan back to reunification.

Both of those arguments fall short in light of our standard of review. As explained above, we are bound by the juvenile court's explicit and implicit findings of fact. As articulated in its extensive letter opinion, the court disagreed with mother's view that she has made significant progress toward keeping herself and M safe from domestic violence and instead found that mother had not made progress on that front. Given the court's view of the record, it is not clear to us that any guardianship motion would be destined to fail. As for the preference recognized in ORS 419B.090(5), that statutory provision states in full, "Although there is a strong preference that children live in their own homes with their own families, the state recognizes that it is not always possible or in the best interests of the child or the public for children who have been abused or neglected to be reunited with their parents or guardians." Mother and ODHS had the burden to prove that M could be safely returned to mother in a reasonable time, the juvenile court was unpersuaded by their evidence, and we cannot say on this record that the court had to change the plan as a matter of law.

Affirmed.